

Ian S. Marx
Tel 973.360.7951
marxi@gtlaw.com

May 1, 2024

**VIA ECF**
Robert Kirsch, U.S.D.J.
Clarkson S. Fisher Building
& U.S. Courthouse
402 East State Street
Trenton, NJ 08608

      Re:    **The Beverage Works NY, Inc. v. Red Bull North America, Inc.
              Civil Action No. 3:24-cv-05745-RK-JBD**

Dear Judge Kirsch:

      We represent Defendant Red Bull North America, Inc. ("Red Bull") with respect to this action filed yesterday by Plaintiff The Beverage Works NY, Inc. ("Plaintiff"). We write to provide the Court with certain facts pertinent to Plaintiff's motion for a temporary restraining order and to advise the Court that no emergent action is necessary here.

      The facts are straightforward. Red Bull sent Plaintiff a notice of termination of the parties' distribution agreement on March 19, 2024, with the effective date of the termination being June 2, 2024. Rather than immediately seeking to enjoin the termination, Plaintiff started to wind down its business and negotiate a transition plan with Red Bull (while simultaneously arguing entitlement to a separation payment). Specifically:

- On April 12, 2024, Plaintiff notified all of its employees that Red Bull had terminated the distribution agreement and would be taking over distribution in Plaintiff's territory effective June 3, 2024.
- That same day, Plaintiff informed its employees that Red Bull would start formal branded recruitment efforts on April 15, 2024. Plaintiff knew that some of its employees started applying to work with Red Bull.
- Trade press (Beverage Business Insights) also announced the termination on April 12, 2024.
- Following Plaintiff's notice to its employees and the trade press announcement, Red Bull notified all customers of the transition in order to meet customer requirements. This included 85 retailers with 5,316 stores. Red Bull had informed Plaintiff it would notify customers on this date.
- By April 20, 2024, Plaintiff was already informing a customer it could not sign up a new account because it would no longer be supplying Red Bull.
- When negotiations for a separation payment stalled in mid-April, Red Bull proposed a prompt mediation and suggested mediators (with whom Red Bull had not had any prior dealings) with availability as early as April 23, 2024.

ALBANY
AMSTERDAM
ATLANTA
AUSTIN
BERLIN¬
BOCA RATON
BOSTON
CHICAGO
DALLAS
DELAWARE
DENVER
FORT LAUDERDALE
HOUSTON
LAS VEGAS
LONDON*
LOS ANGELES
MEXICO CITY⁺
MIAMI
MILAN**
NEW JERSEY
NEW YORK
NORTHERN VIRGINIA
ORANGE COUNTY
ORLANDO
PHILADELPHIA
PHOENIX
ROME**
SACRAMENTO
SAN FRANCISCO
SEOUL∞
SHANGHAI
SILICON VALLEY
TALLAHASSEE
TAMPA
TEL AVIV^
TOKYO¤
WARSAW~
WASHINGTON, D.C.
WESTCHESTER COUNTY
WEST PALM BEACH

¬OPERATES AS
 GREENBERG TRAURIG GERMANY, LLP
* OPERATES AS
 GREENBERG TRAURIG MAHER LLP
⁺ OPERATES AS
 GREENBERG TRAURIG, S.C.
** STRATEGIC ALLIANCE
∞ OPERATES AS
 GREENBERG TRAURIG LLP
 FOREIGN LEGAL CONSULTANT OFFICE
^ A BRANCH OF
 GREENBERG TRAURIG, P.A.,
 FLORIDA, USA
¤ OPERATES AS
 GT TOKYO HORITSU JIMUSHO
~ OPERATES AS
 GREENBERG TRAURIG GRZESIAK SP.K.

GREENBERG TRAURIG, LLP ∎ ATTORNEYS AT LAW ∎ WWW.GTLAW.COM
500 Campus Drive, Suite 400 ∎ Florham Park, New Jersey 07932 ∎ Tel 973.360.7915 ∎ Fax 973.301.8410

May 1, 2024
Page 2

- Plaintiff declined that offer, instead submitting the dispute to AAA mediation in Los Angeles and selecting a May 28, 2024 mediation date.
- In mid-April, Plaintiff asked Red Bull to move the termination date so the parties could mediate, claiming that they would suffer because of alleged WARN Act penalties and other monetary costs. Red Bull declined to move the termination date because the transition and Plaintiff's winddown were already well underway. To alleviate Plaintiff's concerns on cost, Red Bull offered to front any of Plaintiff's alleged WARN Act penalties to counteract the monetary harm, as long as Plaintiff agreed not to seek to enjoin the termination. Greenberg Traurig's letter communicating that proposal is attached. Plaintiff ignored it.
- On April 19, 2024, Plaintiff's VP of Operations acknowledged that "manpower is tight and expected to decrease as employees move on."
- On April 26, 2024, that same VP rushed Red Bull to pick up items from its facilities because Plaintiff is "shutting down 6 facilities."
- On April 30, 2024 – the *day Plaintiff filed its motion* – a Director with Plaintiff who oversees sales to national and regional accounts sent an email to a buyer of a grocery chain affirming that it would no longer be distributing Red Bull: **"I wanted to formally inform you that The Beverage Works will no longer be distributing Red Bull in the NY Region as of 6/3. RBDC will be taking over on that date."**

After *six weeks* of Plaintiff winding down its business and negotiating a transition plan, Plaintiff's suggestion that there is an emergency entitling it to injunctive relief is not well taken. None of Plaintiff's actions is consistent with wanting to or being able to stay in business, and, as detailed above, Plaintiff is already winding down and will not be able to service accounts by June 2.

As the foregoing demonstrates, any claimed emergency has been created by Plaintiff. Plaintiff waited six weeks from the date of the notice of termination and two weeks from Red Bull notifying Plaintiff that it would not move the termination date to file this motion. Plaintiff also did this without providing any advance notice to Red Bull or otherwise complying with F.R.C.P. 65(b) or Local Civil Rule 65.1. Plaintiff now is using its own delay and decision to choose a May 28 mediation over one as early as April 23 to justify the need for the Court to act on an emergent basis. Fenlon Decl., ¶ 17. This course of conduct suggests a lack of good faith and entitlement to emergent injunctive relief.

Should the Court require Red Bull to respond to the motion for a TRO and a preliminary injunction, Red Bull will set forth all the reasons why the relief Plaintiff seeks is improper and inequitable, including that Plaintiff is not likely to succeed on the merits, that any harm to Plaintiff is compensable by monetary damages, and that the balance of hardships weighs in Red Bull's favor. At this preliminary stage, however, Red Bull wanted to share with the Court how it would be harmed by the issuance of an injunction lifting the termination date. Following the notice of termination and in reliance on business to business conversations between the parties and Plaintiff's actions to wind down its business, Red Bull has taken steps at significant cost over the last six weeks to transition the New York/New Jersey market from Plaintiff to Red Bull. Among other things, Red Bull has:

May 1, 2024
Page 3

- Extended offers to 74 employees to service the territory, some of whom have already started their roles.
- Purchased or leased over 100 trucks.
- Signed 7 leases – a financial commitment of in excess of tens of millions of dollars.
- Notified 85 retailers with 5,316 stores on April 15, 2024.

For all of these reasons, as well as those that will be detailed when Red Bull opposes Plaintiff's motion, Red Bull objects to the entry of any temporary restraints or preliminary injunctive relief. Red Bull, not Plaintiff, will suffer irreparable harm if an injunction issues. While Plaintiff is winding down its business and looking for a payment, Red Bull is dedicating all of its attention and resources to launching on June 3, 2024. Moreover, the foregoing actions illustrate why, in the event the Court decides to enter restraints, the Court should require Plaintiff to post a significant bond to ensure that Red Bull is not harmed by any restraints. *See* F.R.C.P. 65(c).

Meanwhile, as the Prayer for Relief in Plaintiff's Complaint – which does not seek any permanent injunctive relief – demonstrates, for Plaintiff this case is about money damages, as is typically the case in claims for improper termination under the New Jersey Franchise Practices Act.[1] *See, e.g.*, *Westfield Centr. Serv., Inc. v. Cities Serv. Oil. Co.*, 86 N.J. 453, 466-67 (1981) ("Where a franchisor, acting in good faith for a bona fide reason, terminates a franchise in accordance with the terms of the agreement, permanent injunctive relief would not be appropriate, even though damages under the statute would be available."); *Alboyacian v. BP Prods. N. Am.*, 2011 U.S. Dist. LEXIS 134453, *7 (D.N.J. November 22, 2011) ("To the extent that Count Nine seeks specific performance or an injunction forcing BP to continue the franchise relationship, such relief is not available to the Franchisees. . . . And the Court, having ruled that the intended terminations would violate the NJFPA, does not see a basis for injunctive relief. . . . [N]o irreparable harm will have occurred as monetary damages could adequately compensate the Franchisees for any losses.").

Red Bull is prepared to mediate Plaintiff's claim for damages on May 28, but there is no basis to halt the June 2 transition. We appreciate the Court's consideration and welcome a call with Your Honor to discuss these issues.

Respectfully submitted,

s/Ian S. Marx

Ian S. Marx

cc: All counsel of record (via ECF)

---

[1] The New Jersey Franchise Practices Act does not apply to the non-exclusive Distribution Agreement between the parties, but Red Bull addresses it here as it is the sole basis for Plaintiff's request for injunctive relief.



Jeffrey W. Greene
Tel 617.310.6031
Fax 617.897.0931
Jeffrey.Greene@gtlaw.com

April 17, 2024

**VIA EMAIL**
Marks & Klein, LLC
331 Newman Springs Rd.
Bldg. 1 Suite 143
Red Bank, NJ 07701
Attn: Justin M. Klein

Hinckley Allen
30 South Pearl Street, Suite 901
Albany, NY 12207
Attn: Chris Fenlon and Jennifer Doran

Re:   **RBNA/TBW – Follow Up Letter Re Termination Date**

Dear Justin, Chris and Jennifer:

On behalf of Red Bull North America, Inc. ("RBNA"), we are following up on our April 15, 2024 letter to The Beverage Works NY, Inc. ("TBW") regarding mediation, the June 2, 2024 transition date ("Transition Date"), and subsequent discussions between counsel.

We understand that TBW's primary concern with the Transition Date is that TBW believes it will incur costs and penalties under the federal, New York and New Jersey WARN Acts, which TBW asserts require 90 days' notice of termination to TBW's employees. TBW estimates these costs and penalties to be $3.8 million (we have not seen adequate documentation). We think TBW's concern can be adequately addressed while maintaining the Transition Date.

First, as we stated in our April 15 letter, RBNA has agreed to promptly mediate its dispute with TBW. We sent two mediators who have availability in the next 4-6 weeks. I understand your client might prefer to follow the AAA process which, as we discussed, will likely take longer. AAA sent a list of mediators today (April 17); our strike lists are due on April 22.

Second, TBW should explore (and we expect they are exploring) the exceptions under the relevant WARN Acts to the statutory notice requirement, including the unforeseen business circumstances exception applicable under the federal and New York statutes. This will reduce TBW's WARN Act liabilities.

**Greenberg Traurig, LLP | Attorneys at Law**
One International Place  |  Suite 2000  |  Boston, Massachusetts 02110  |  T +1 617.310.6000  |  F +1 617.310.6001

Albany. Amsterdam. Atlanta. Austin. Berlin¬. Boston. Charlotte. Chicago. Dallas. Delaware. Denver. Fort Lauderdale. Houston. Kingdom of Saudi Arabia⁑. Las Vegas. London⁎. Long Island. Los Angeles. Mexico City⁺. Miami. Milan⁑. Minneapolis. New Jersey. New York. Northern Virginia. Orange County. Orlando. Philadelphia. Phoenix. Portland. Sacramento. Salt Lake City. San Diego. San Francisco. Seoul∞. Shanghai. Silicon Valley. Singapore⁑. Tallahassee. Tampa. Tel Aviv⁑. Tokyo⁑. United Arab Emirates⁑. Warsaw~. Washington, D.C. West Palm Beach. Westchester County.

Operates as: ¬Greenberg Traurig Germany, LLP; «Greenberg Traurig Khalid Al-Thebity Law Firm; *A separate UK registered legal entity; +Greenberg Traurig, S.C.; »Greenberg Traurig Santa Maria; ∞Greenberg Traurig LLP Foreign Legal Consultant Office; ⁑Greenberg Traurig Singapore LLP; ^A branch of Greenberg Traurig, P.A., Florida, USA; ≈GT Tokyo Horitsu Jimusho and Greenberg Traurig Gaikokuhojimubegoshi Jimusho; ‹Greenberg Traurig Limited; ~Greenberg Traurig Nowakowska-Zimoch Wysokiński sp.k.

www.gtlaw.com

April 17, 2024
Page 2

    Third, and perhaps most helpful, as a gesture of good faith and in the interest of making the transition as smooth as possible and addressing TBW's concern with WARN costs, RBNA will agree to front TBW's documented costs and expenses associated with the applicable WARN Acts and to mediate this dispute prior to the end of May. RBNA will need documentation to support the WARN Act exposure. Any WARN Act costs/penalties fronted by RBNA will be offset (in whole or in part) against any settlement reached at the mediation, and, to the extent mediation is not successful, RBNA will have to right to seek reimbursement from TBW in any litigation. In exchange, TBW will (a) send any WARN Act notices no later than April 22, 2024, and (b) agree that, even if the mediation is not successful, the Transition Date will remain intact and that it will not take any steps at any time (whether prior or subsequent to mediation), through litigation or otherwise, to change the Transition Date or to halt the termination of the Distribution Agreement.

    Given the steps the parties have already taken to wind down the relationship and the 75 days' notice RBNA already provided, RBNA is unable to agree to move the Transition Date.  As explained in our April 15 letter, the transition process is significantly underway, and delay would cause RBNA to incur additional costs and business disruption.  As noted in previous communications, RBNA has commenced hiring for this region and TWB employees are already seeking new employment.  TBW's alleged WARN Act liability also does not justify moving the Transition Date. As stated above, there may be exceptions under the potentially applicable WARN Acts. Had TBW provided any WARN Act notices upon receiving RBNA's March 19, 2024 termination notice, any WARN Act costs and penalties would have been significantly less. TBW's delay in providing any notices is increasing its statutory exposure. Lastly, any WARN Act exposure would not justify any injunctive relief seeking to change the Transition Date, including because it would be compensable by money damages and any associated harm is self-inflicted.

    This arrangement will allow the parties to have a productive mediation without any concern about the Transition Date or WARN Act exposure affecting the parties' settlement discussions. If TBW agrees to this proposal, please have TBW countersign this letter below, and we will have the letter signed by RBNA.

    In the meantime, we remind you that TBW is obligated to comply with the duties set forth in Section IX of the Agreement. RBNA reserves all rights to raise any claims regarding a breach of the Agreement. This letter shall not be construed as a waiver of any rights that RBNA has under the Agreement or applicable law.

    Very truly yours,

    Jeffrey W. Greene

April 17, 2024
Page 3

**Agreed to by:**

**The Beverage Works NY, Inc.**

_____
Name:
Title:

**Red Bull North America, Inc.**

_____
Name:
Title