**HINCKLEY, ALLEN & SNYDER LLP**
Mitchell R. Edwards, Esq.
100 Westminster Street, Suite 1500
Providence, RI 02903
Telephone: 401-274-2000
Facsimile: 401-277-9600
medwards@hinckleyallen.com

Christopher V. Fenlon, Esq. (*pro hac vice*)
Kylie M. Huff, Esq. (*pro hac vice*)
30 South Pearl Street, Suite 901
Albany, New York 12207
Telephone: (518) 396-3100
Facsimile: (518) 396-3101
cfenlon@hinckleyallen.com
khuff@hinckleyallen.com

**MARKS & KLEIN, LLC**
Justin M. Klein, Esq.
Brent Davis, Esq.
63 Riverside Avenue
Red Bank, New Jersey 07701
Telephone: (732) 747-7100
Facsimile: (732) 219-0625
justin@marksklein.com
brent@marksklein.com

*Attorneys for Plaintiff*
*The Beverage Works NY, Inc.*

**IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| THE BEVERAGE WORKS NY, INC., <br><br>　　　　　　　　　　　　Plaintiff, <br><br>　-against- <br><br> RED BULL NORTH AMERICA, INC., <br><br>　　　　　　　　　　　　Defendant. | Civil Case No.: 24-cv-5745 (RK)(BD) <br><br> **PLAINTIFF'S REPLY TO DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION AND TEMPORARY RESTRAINING ORDER** |

# **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ................................................................................................ ii

PRELIMINARY STATEMENT ..........................................................................................1

ARGUMENT .......................................................................................................................2

I. BEVERAGE WORKS HAS SHOWN A SUBSTANTIAL LIKELIHOOD
   OF SUCCESS ON THE MERITS ..................................................................................2

    A.  Beverage Works Maintains a New Jersey "Place of Business"..........................2

    B.  A Clear "Community of Interest" Exists Between the Parties ............................4

    C.  RBNA Terminated the Distribution Agreement "Without Cause"......................7

II. BEVERAGE WORKS DID NOT DELAY SEEKING RELIEF..............................................8

III. THE NJFPA AUTHORIZES BEVERAGE WORKS TO SEEK
    TEMPORARY INJUNCTIVE RELIEF .........................................................................9

IV. THE BALANCE OF HARMS FAVORS INJUNCTIVE RELIEF.........................................9

V. THE PUBLIC INTEREST FAVORS BEVERAGE WORKS ................................................11

CONCLUSION...................................................................................................................11

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Atl. City Coin & Slot Serv. Co. v. IGT*,
  14 F. Supp. 2d 644 (D.N.J. 1998) ............................................................................... 9, 11

*Cassidy Podell Lynch, Inc. v. Snydergeneral Corp.*,
  944 F.2d 1131 (3d Cir. 1991) ............................................................................................ 5

*Cooper Distrib. Co. v. Amana Refrigeration, Inc.*,
  63 F.3d 262 (3d Cir. 1991) ................................................................................................ 6

*DeLuca v. Allstate New Jersey Ins. Co.*,
  2011 WL 13377041 (N.J.Super.Ch. Dec. 28, 2011) ......................................................... 6

*Dunkin' Donuts Franchised Restaurants LLC v. Elkhatib*,
  2009 WL 2192753 (N.D. Ill. July 17, 2009) ..................................................................... 9

*Engines, Inc. v. MAN Engines & Components, Inc.*,
  2010 WL 3021871 (D.N.J. July 29, 2010) ..................................................................... 4-5

*Fischer Thompson Beverages, Inc. v. Energy Brands Inc.*,
  2007 WL 3349746 (D.N.J. Nov. 9, 2007) ......................................................................... 3

*Graceway Pharms., LLC v. Perrigo Co.*,
  697 F. Supp. 2d 600 (D.N.J. 2010) ................................................................................... 9

*Instructional Sys., Inc. v. Computer Curriculum Corp.*,
  130 N.J. 324 (1992) .................................................................................................. 3, 4, 6

*Liberty Sales Assocs., Inc. v. Dow Corning Corp.*,
  816 F. Supp. 1004 (D.N.J. 1993) ...................................................................................... 3

*Mallet & Co. Inc. v. Lacayo*,
  16 F.4th 364 (3d Cir. 2021) ............................................................................................ 11

*New Jersey Ass'n of Health Care Facilities, Inc. v. Gibbs*,
  838 F. Supp. 881 (D.N.J. 1993) ........................................................................................ 8

*Oracle Am., Inc. v. Innovative Tech. Distribs. LLC*,
  2012 WL 4122813 (N.D. Cal. Sept. 18, 2012) ................................................................. 3

*Reedco, Inc. v. Hoffman-La Roche, Inc.*,
  667 F. Supp. 1072 (D.N.J. 1987) ................................................................................... 8-9

*Shell Oil Co. v. Marinello*,
   63 N.J. 402 (1973) .................................................................................................... 11

*Strassle v. Bimbo Foods Bakeries Distrib., Inc.*,
   2013 WL 1007289 (D.N.J. Mar. 13, 2013)................................................................. 4

*Warner Lambert Co. v. McCrory's Corp.*,
   718 F. Supp. 389 (D.N.J. 1989) .................................................................................. 8

*Watchung Spring Water Co. v. Nestle Waters N. Am. Inc.*,
   588 F. App'x 197 (3d Cir. 2014) ................................................................................. 3

*Watchung Spring Water Co. v. Nestle Waters N. Am. Inc.*,
   2014 WL 5392065 (D.N.J. Oct. 23, 2014).................................................................. 3

*Westfield Ctr. Serv., Inc. v. Cities Serv. Oil Co.*,
   86 N.J. 453 (1981) ................................................................................................. 7, 9

*Zambelli Fireworks Mfg. Co. v. Wood*,
   592 F.3d 412 (3d Cir. 2010)...................................................................................... 11

**Statutes**

N.J.S.A. § 56:10-1.............................................................................................................. 1
N.J.S.A. § 56:10-2.............................................................................................................. 2
N.J.S.A. § 56:10-3.............................................................................................................. 3
N.J.S.A. § 56:10-5.............................................................................................................. 7
N.J.S.A. § 56:10-10............................................................................................................ 9

The Beverage Works NY, Inc. ("Beverage Works") submits this reply to Red Bull North America, Inc.'s ("RBNA") Opposition to Plaintiff's Motion for a Preliminary Injunction and Temporary Restraining Order (the "Opposition").[1]

## PRELIMINARY STATEMENT

The New Jersey Franchise Practices Act, N.J.S.A. § 56:10-1, *et seq*. ("NJFPA"), safeguards franchisees' rights, including those of distributors like Beverage Works who do not sell directly to consumers. Franchisors are typically large, well-established entities, while franchisees are smaller, independently-owned businesses. As a result of this disparity, the New Jersey Legislature observed that franchisees often faced unfair contract provisions favoring the franchisor. Among the most problematic contractual provisions are those that provide the franchisor the right to terminate the parties' agreement *at any time, for any reason*. A franchisee is vulnerable to termination at the franchisor's whim, even after years of selling and promoting its products. Armed with the right to terminate for any reason, a franchisor can force a franchisee to surrender its business and wind down solely because it may serve the franchisor's interests. The NJFPA addresses these inequities by preventing franchisors like RBNA from terminating such agreements without cause.

In its Opposition, RBNA has utterly ignored the plain language and purpose of the NJFPA. Beverage Works has exclusively promoted and distributed Red Bull Products throughout New York and New Jersey for more than *twenty years*. During the parties' relationship, RBNA never noticed Beverage Works of any contractual defaults. In fact, when RBNA abruptly terminated the Distribution Agreement on March 19, 2024, it expressly did so "Without Cause." Thus, RBNA's

---

[1] Capitalized terms not otherwise defined shall have the meaning ascribed to them in the Verified Complaint.

1

after-the-fact claim that Beverage Works is not complying with the Distribution Agreement lacks merit and credibility.  Clearly, the real motivation for RBNA's termination stems from its business decision to transfer Beverage Works' Territory to its affiliate – Red Bull Distribution Company, Inc. ("RBDC") – just as it has done to other distributors around the country.  Beverage Works faces imminent closure in just ten days with nothing to show for its more than two decades of service to RBNA.  This is exactly the scenario the NJFPA was enacted to prevent.

## ARGUMENT

I. **BEVERAGE WORKS HAS SHOWN A SUBSTANTIAL LIKELIHOOD OF SUCCESS ON THE MERITS**

RBNA erroneously argues that (A) Beverage Works does not have a New Jersey "place of business;" (B) there is no "community of interest" between the parties; and (C) notwithstanding the clear record to the contrary, RBNA has good cause to terminate the Distribution Agreement. These arguments are without merit.

A. **Beverage Works Maintains a New Jersey "Place of Business."**

The NJFPA provides that, "distribution and sales through franchise agreements in the State of New Jersey vitally affects the general economy of the State, the public interest and the public welfare."  N.J.S.A. § 56:10-2.  In 2010, the statute was expressly amended:

> to protect franchisees from unreasonable termination by franchisors that may result from a disparity of bargaining power between national and regional franchisors and small franchisees.  The Legislator finds that these protections are necessary to protect not only retail businesses, *but also wholesale distribution franchisees that, through their efforts, enhance the reputation and good will of franchisors in this State*.  Further, the Legislature declares that the courts have in some cases more narrowly construed the Franchise Practices Act than was intended by the Legislature.

*Id.* (emphasis added).  The Legislature further amended the NJFPA to expand the definition of "Place of Business" to expressly protect distributors like Beverage Works who do not sell directly

2

to consumers. N.J.S.A. § 56:10-3. For such distributors "place of business" means "an office or warehouse from which franchisee personnel visit or call upon customers *or from which the franchisor's goods are delivered to customers*." N.J.S.A. § 56:10-3 (emphasis added). Thus, "notwithstanding the fact that the franchisee does not display or sell the franchisor's goods from its office, its office may still qualify as a place of business if (1) it is the place where the franchisee's personnel call upon customers or (2) the franchisee's goods are delivered to customers from the location." *Oracle Am., Inc. v. Innovative Tech. Distribs. LLC*, 2012 WL 4122813, at *16 (N.D. Cal. Sept. 18, 2012) (applying New Jersey law) (holding distributor that sold to providers was covered by "place of business" exception where supplier products were stored at its facilities in New Jersey and delivered to customers). RBNA does not dispute that Beverage Works sells Red Bull Products exclusively to retailers from incoming shipments and inventory located at its New Jersey offices and warehouses. Verified Compl. ¶¶ 22, 52; Opp. at 20.

Ignoring prevailing New Jersey law, RBNA relies on a slew of *pre-amendment* cases to argue that Beverage Works' offices and warehouses do not constitute a "place of business." *See e.g., Liberty Sales Assocs., Inc. v. Dow Corning Corp.*, 816 F. Supp. 1004, 1008 (D.N.J. 1993) (applying pre-amendment definition of "Place of Business"); *Fischer Thompson Beverages, Inc. v. Energy Brands Inc.*, 2007 WL 3349746, at *3 (D.N.J. Nov. 9, 2007) (same); *Instructional Sys., Inc. v. Computer Curriculum Corp.*, 130 N.J. 324, 348 (1992) (same) ("*ISI*"). Moreover, *Watchung Spring Water Co. v. Nestle Waters N. Am. Inc.*, 588 F. App'x 197, 198 (3d Cir. 2014) is wholly inapposite. There, the Third Circuit considered whether *a direct to consumer distributor* satisfied the "place of business" requirement. *See Watchung Spring Water Co. v. Nestle Waters N. Am. Inc.*, 2014 WL 5392065, at *4 (D.N.J. Oct. 23, 2014) (noting counsel for Watchung insisted that direct sales to customers comprised most of the activity occurring at Watchung's facility).

The court did not consider whether the express exception for those "who do not make a majority of their sales directly to consumers," like Beverage Works, applied. RBNA does not address the applicable exception in its Opposition.

A franchise is governed by the NJFPA "whether the contract required a place of business in New Jersey or whether the parties *reasonably anticipated* that the franchisee would establish a New Jersey place of business." *ISI*, 614 A.2d at 136 (emphasis added). RBNA argues that the Distribution Agreement "only required that TBW maintain a warehouse somewhere in New York or New Jersey." Opp. at 21. Even if true, the Distribution Agreement shows that the parties reasonably anticipated that Beverage Works would maintain a place of business in New Jersey. Schedule B of the Distribution Agreement lists all of the New Jersey counties constituting the Territory. Verified Compl., Ex. B at Sched. B. Thus, it was reasonable to anticipate that Beverage Works would maintain facilities in New Jersey to support such broad distribution, and Beverage Works has maintained two facilities in the northern and southern parts of New Jersey for more than twenty years. *Id.* ¶ 20. As such, Beverage Works indisputably satisfies the "place of business" requirement under the NJFPA. *See Strassle v. Bimbo Foods Bakeries Distrib., Inc.*, 2013 WL 1007289, at *4 (D.N.J. Mar. 13, 2013) (finding it could be inferred from parties' distribution agreement that plaintiff maintained a "place of business" in New Jersey).

### B. A Clear "Community of Interest" Exists Between the Parties.

RBNA argues that there is no "community of interest" between the parties because Beverage Works was allegedly not required to make franchise-specific investments and RBNA did not exercise control over Beverage Works. Opp. at 23. This ignores the nature of the parties' relationship over the past twenty-four years. *See Engines, Inc. v. MAN Engines & Components, Inc.*, 2010 WL 3021871, at *7 (D.N.J. July 29, 2010). In *Engines*, the court rejected the

4

franchisor's argument that there was no community of interest because certain franchise-specific investments were not required by the underlying agreement:

> Much of MAN's argumentation relies upon the premise that Engine's investments in the putative franchise were not required by the [Agreement]. … ***This argument evinces a misunderstanding of the NJFPA****.  The Court's inquiry is not limited to the four-corners of the [Agreement], nor should it be.  The New Jersey Supreme Court has instructed that the putative franchise should be evaluated according to 'the terms of the agreement between the parties or the nature of the franchise business.'*

*Id.* (emphasis added).  There, the court found a community of interest between the parties as the franchisor "acceded to, if not required, [the franchisee's] franchise-related expenses." *Id.*  Thus, courts find a community of interest where the "*nature of the business* required [plaintiff] to acquire [franchisor-specific] knowledge," where the nature of the business required plaintiff to implement marketing strategies dictated by the franchisor, and where the franchisor imposed competitive restraints.  *Id.* at n.4.

Notably, RBNA does not attempt to address the numerous franchise-specific investments Beverage Works has undertaken during the parties' relationship.  For example, RBNA required Beverage Works to invest in a luxury skybox for the New York Red Bulls Soccer Arena, and it required Beverage Works to renovate its facilities.  Affirmation of Christopher Ustick dated April 30, 2024 ("First Ustick Aff.") ¶¶ 47-51.  Moreover, the cases RBNA cites on this point are wholly distinguishable.  In *Cassidy Podell Lynch, Inc. v. Snydergeneral Corp.*, 944 F.2d 1131, 1144 (3d Cir. 1991), the court found that the plaintiff had not presented *any evidence* that it made a franchise-specific investment.  Here, Beverage Works has made numerous franchise-specific investments.  Verified Compl. ¶¶ 80-82.  The court further found that Cassidy's customer base was transferrable "since Snyder did not interfere with or control Cassidy's customer contacts."  *Id.*  Here, RBNA controls the vast majority of Beverage Works' customer relationships.  RBNA not

5

only arranges sales to certain chain stores, but it sets pricing through separate agreements with national and regional retailers. First Ustick Aff. ¶¶ 35-41. Simply put, if the Distribution Agreement is terminated, Beverage Works no longer has a customer base for any product.

RBNA baldly asserts that Beverage Works was "free to distribute other products." Opp. at 24. The Distribution Agreement expressly prohibits distribution of "Competitive Products," which is broadly defined to include:

> every beverage, non-beverage food and other category of goods which claims to improve personal energy, physical or cognitive performance, endurance, vitalization or offer comparable benefits regardless of how or where the claims are made or who makes the claims . . . For purposes of clarifying the scope of goods included within the definition of Competitive Product, the parties understand and agree that Competitive Product includes, without limitation, any beverage (whether alcoholic or non-alcoholic, carbonated or non-carbonated or formulated or possessing any other distinguishing characteristic) and non-beverage food or other category of goods regardless of the format in which it is sold or packaged . . . and whether or not the goods are manufactured, distributed, marketed, advertised or sold on the Effective Date or first manufactured, distributed, marketed, advertised or sold during the Term.

Verified Compl., Ex. B at I(F). RBNA's claim that Beverage Works was "free" to distribute other products is disingenuous as RBNA has denied every Beverage Works request to distribute other products. First Ustick Aff. ¶ 46.

Furthermore, the law is clear that economic dependence is the *most important factor* in determining whether a community of interest exists. *Cooper Distrib. Co. v. Amana Refrigeration, Inc.*, 63 F.3d 262, 272 (3d Cir. 1991) (citing *ISI*, 130 N.J. at 365). For the past twenty-four years, Beverage Works has sold and marketed only Red Bull Products. First Ustick Aff. ¶ 4. Thus, 100% of its revenue is based on its sales of the Red Bull Products. This fact alone distinguishes the cases RBNA relies on in the Opposition. *See* Opp. at 25-26.[2] RBNA has asserted numerous erroneous

---

[2] *DeLuca v. Allstate New Jersey Ins. Co.*, 2011 WL 13377041, at *26 (N.J.Super.Ch. Dec. 28, 2011) is wholly inapplicable. In that case, the question before the court was whether the NJFPA

6

factual assertions concerning whether a community of interest exists between the parties, and Beverage Works directs the Court to the Reply Affirmation of Christopher Ustick, dated May 23, 2024 (the "Second Ustick Aff."), which further addresses these point.

### C. RBNA Terminated the Distribution Agreement "Without Cause."

RBNA claims "there is 'good cause' to terminate an agreement governed by the NJFPA if a franchisee failed to substantially comply with its obligations under a contract." Opp. at 26. RBNA claims it has such good cause because it allegedly has concerns about Beverage Works' performance. *Id.* There is one glaring problem with this argument: the March 19, 2024 Termination Notice expressly terminated the Distribution Agreement "**Without Cause**":

> This letter shall serve as notice that:
>
> Pursuant to Section VIII.B of the Agreement, "Termination Without Cause," Company hereby exercises its contractual right to terminate the Agreement without cause. This termination will be effective June 3, 2024 (*i.e.*, Distributor's last day of operation under the Agreement will be June 2, 2024).

Verified Compl. ¶ 13. Under the NJFPA, "[i]t shall be a violation . . . for any franchisor . . . to terminate . . . a franchise without having first given written notice *setting forth all the reasons for such termination* . . . at least 60 days in advance of such termination." N.J.S.A. § 56:10-5 (emphasis added). It is further a violation for a franchisor to terminate a franchise "without good cause," defined as "failure by the franchisee to substantially comply with those requirements imposed upon him by the franchise." *Id.* The law is clear that this "plain meaning . . . supported by the legislative history, sharply curtails a franchisor's right to end the franchise *in the absence of a breach by the franchisee*." *Westfield Ctr. Serv., Inc. v. Cities Serv. Oil Co.*, 86 N.J. 453, 465 (1981). RBNA has articulated no such breach here, particularly where Beverage Works was subject to a "best efforts" standard in the Distribution Agreement and has indisputably undertaken

---

applied to the relationship between insurance companies and insurance agents. The court held that it did not.

such efforts to carry out its obligations. *See generally* Second Ustick Aff. Furthermore, during the parties' twenty-four year relationship, RBNA never sent a notice of default to Beverage Works or otherwise required it to cure any purported default. *Id*. ¶ 29. RBNA made a decision that RBDC should take over Beverage Works' Territory. Whether it was unaware of the strong protection available to Beverage Works under New Jersey law, or simply did not care, RBNA cannot now manufacture good cause for terminating the Agreement. Beverage Works looks forward to discovery on this issue to uncover RBNA's actual motivations for terminating the Distribution Agreement.

## II. BEVERAGE WORKS DID NOT DELAY SEEKING RELIEF

RBNA misleadingly claims "Plaintiff waited six weeks from its receipt of Red Bull's notice to bring this Motion, and has done nothing to explain the reason for its delay." Opp. at 27. As RBNA knows, Beverage Works *repeatedly* advised it that its conduct was unlawful. Just eight days after the purported termination Beverage Works informed RBNA of its NJFPA violation and expressly reserved its rights to pursue all claims. *See* Ex. R, Second Ustick Aff., March 27, 2024 Reservation of Rights Letter. Thereafter, at RBNA's request, Beverage Works engaged in good faith discussions to reach a potential resolution. RBNA did not confirm it was still moving forward with its unlawful termination until nearly a month later, in mid-April. *See* May 1, 2024 Letter from GreenbergTraurig, ECF No. 12. At that time, Beverage Works promptly sought relief from this Court weeks before the termination is slated to take effect. Notably, RBNA has cited no case where a mere six weeks constitutes laches or forecloses a showing of irreparable harm for injunctive relief. The cases RBNA cites involve *substantial delays* not relevant here.[3] Thus,

---

[3] *See* Opp. at 27-28 citing *New Jersey Ass'n of Health Care Facilities, Inc. v. Gibbs*, 838 F. Supp. 881, 928 (D.N.J. 1993) (one year delay); *Warner Lambert Co. v. McCrory's Corp.*, 718 F. Supp. 389, 395 (D.N.J. 1989) (Six month delay which did not amount to laches); *Reedco, Inc. v.*

8

RBNA's delay argument has no basis in fact or law.

### III. THE NJFPA AUTHORIZES BEVERAGE WORKS TO SEEK TEMPORARY INJUNCTIVE RELIEF

RBNA argues that "TBW is attempting to do what is impossible both legally and practically: enjoin something that is already happening." Opp. at 30. The Distribution Agreement, however, has not yet terminated, and the NJFPA expressly contemplates a franchisee's right to pursue injunctive relief. N.J.S.A. § 56:10-10. RBNA argues that because "plaintiff could be compensated with money damages," a preliminary injunction cannot issue here. This is decidedly not the law. *Atl. City Coin & Slot Serv. Co. v. IGT*, 14 F. Supp. 2d 644, 669 (D.N.J. 1998) ("*ACC*"). *First*, RBNA relies on *Dunkin' Donuts Franchised Restaurants LLC v. Elkhatib*, 2009 WL 2192753 (N.D. Ill. July 17, 2009), which it purports applies the NJFPA to support that "TBW can be 'readily compensated by money damages.'" Opp. at 30. But that case does not mention the NJFPA and applies Seventh Circuit law not applicable here. *Second*, *Westfield,* 86 N.J. at 466 does not support RBNA's contention that a preliminary injunction should not issue here. There, the court acknowledged the clear language of Section 10 of the NJFPA, and expressly stated that the provision includes a right to seek "[t]emporary injunctive relief or restraints to maintain the status quo during litigation." *Id.*[4] This is precisely the relief Beverage Works seeks in its Motion.

### IV. THE BALANCE OF HARMS FAVORS INJUNCTIVE RELIEF

Remarkably, RBNA argues that it will be harmed if an injunction issues because it believed Beverage Works was winding down its business following the Termination Notice. Opp. at 33.

---

*Hoffman-La Roche, Inc.*, 667 F. Supp. 1072, 1082 (D.N.J. 1987) (year and a half delay); *Graceway Pharms., LLC v. Perrigo Co.*, 697 F. Supp. 2d 600, 605 (D.N.J. 2010) (citing numerous delays, including a three year delay).

[4] RBNA cites other non-NJFPA cases that are not relevant here in light of the NJFPA's statutory right for franchisees to seek injunctive relief.

9

Any harm befalling RBNA, however, is entirely self-created by its violation of the NJFPA. Beverage Works was clear with RBNA from the beginning that it viewed the termination as wrongful and was assessing its options under applicable law. *See* Ex. R, Second Ustick Aff. Furthermore, Beverage Works' actions following the Termination Notice were a direct result of RBNA's wrongful termination. The termination created significant uncertainty for Beverage Works and its employees, and was exacerbated by the fact that RBNA's successor distributor, RBDC, began actively recruiting Beverage Works' employees. Second Ustick Aff. ¶ 40. Beverage Works understood that the news of the termination would become public, and in fairness to its employees and customers, informed them of the situation. *See id.*

Moreover, RBNA's argument that Beverage Works is winding down or that it otherwise cannot stay in business through June 2024, is demonstrably false. Since receiving the Termination Notice, Beverage Works continues to employ hundreds of people, service accounts daily and open *new accounts*, and Beverage Works' business continues to thrive. *Id.* ¶ 42. For example, Beverage Works continues to employ more than 330 employees. *Id.* ¶ 43. In April 2024, Beverage Works sales grew 14.5% as compared to the prior year and was the highest sales volume in the history of the business. *Id.* ¶ 44. Beverage Works secured 25 new accounts during April 2024 alone, and it continues to secure additional shelves in its accounts. *Id.* ¶ 45. Thus, RBNA's contention that "Red Bull will lose significant business, good will, and potentially customers," if an injunction is issued, Opp. at 34, is unsupportable. Beverage Works would continue performing under the Distribution Agreement and selling the Red Bull Products to retailers in the Territory. *Id.* ¶ 46.

Finally, for all its bluster that it will suffer harm if an injunction is granted, RBNA fails to address that its affiliate, non-party RBDC, is the entity that has made the claimed investments in

10

anticipation of RBNA's violation of the NJFPA, *not* RBNA.[5] Thus, the Court should give no weight to RBNA's attempts to rely on alleged harm to a *nonparty*.

V.    THE PUBLIC INTEREST FAVORS BEVERAGE WORKS

As set forth in Beverage Works' motion, the public interest would be served by granting injunctive relief here. Pl. Mot. at 24-25. RBNA argues that the public interest tips in its favor because "the Agreement gives Red Bull the clear right to terminate the parties' agreement at any time, for any reason." Opp. at 36. But New Jersey law is clear that the NJFPA was enacted to protect franchisees from these very termination provisions. *ACC*, 14 F. Supp. 2d 644, 671 (D.N.J. 1998) ("[w]hen enacted, the drafters of the [NJFPA] recognized that although both parties to a franchise relationship may reap economic benefits therefrom, the disparity in their respective bargaining power may lead to unconscionable provisions in franchise agreements. Franchisors are apt to draft contracts permitting them to terminate or refuse to renew franchises at will."); *Shell Oil Co. v. Marinello*, 63 N.J. 402, 410 (1973) ("the [NJFPA] reflects the legislative concern over long-standing abuses in the franchise relationship, particularly provisions giving the franchisor the right to terminate . . . the franchise. To that extent the provisions of the [NJFPA] merely put into statutory form the extant public policy of this State.")

---

[5] For this reason Beverage Works also disputes that RBNA is entitled to $10 million security. RBNA will not incur any monetary losses in connection with an award of injunctive relief here. To the extent it can even articulate monetary damages, which Beverage Works disputes, such damages belong to RBDC, not RBNA. Furthermore, where "the balance of the equities weighs overwhelmingly in favor of the party seeking the injunction, a district court has the discretion to waive the Rule 65(c) bond requirement." *See Zambelli Fireworks Mfg. Co. v. Wood*, 592 F.3d 412, 426 (3d Cir. 2010). Ultimately, the amount of any bond "requires a delicate balance of the adverse parties' competing interests, [and] the decision rests within the district court's sound discretion." *Mallet & Co. Inc. v. Lacayo*, 16 F.4th 364, 391 (3d Cir. 2021). This entire case is about the imbalance of power between RBNA as franchisor and Beverage Works as franchisee. Beverage Works thus respectfully requests the Court balance the equities and set a much lower bond if one is deemed necessary.

11

## **CONCLUSION**

For the foregoing reasons, Beverage Works respectfully requests that the Court grant its motion for a preliminary injunction and temporary restraining order.

Dated:  May 23, 2024                                    **HINCKLEY, ALLEN & SNYDER LLP**

*/s/ Mitchell R. Edwards*
Mitchell R. Edwards, Esq.
100 Westminster Street, Suite 1500
Providence, RI 02903
Telephone: 401-274-2000
Facsimile: 401-277-9600
medwards@hinckleyallen.com

Christopher V. Fenlon, Esq. (*pro hac vice*)
Kylie M. Huff, Esq. (*pro hac vice*)
30 South Pearl Street, Suite 901
Albany, New York 12207
Telephone: (518) 396-3100
Facsimile: (518) 396-3101
cfenlon@hinckleyallen.com
khuff@hinckleyallen.com

**MARKS & KLEIN, LLC**
Justin M. Klein, Esq.
Brent Davis, Esq.
63 Riverside Avenue
Red Bank, New Jersey 07701
Telephone: (732) 747-7100
Facsimile: (732) 219-0625
justin@marksklein.com
brent@marksklein.com

*Attorneys for Plaintiff*
*The Beverage Works NY, Inc.*

## **CERTIFICATION**

      I certify that a copy of the above was e-filed with the Court and sent via email and/or first class mail on May 23, 2024 to all counsel and self-represented parties of record.

Jeffrey Greene, Esq.
Aaron Van Nostrand, Esq
GreenbergTraurig
One International Place, Suite 2000
Boston, MA 02110
Jeffrey.greene@gtlaw.com
Aaron.VanNostrand@gtlaw.com

*Counsel for Defendant*

                                              */s/ Mitchell R. Edwards*
                                               Mitchell R. Edwards